IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JACQUELINE QUARLES,<br><br>　　*Plaintiff*,<br><br>v.<br><br>MARYLAND DEPARTMENT OF<br>HUMAN RESOURCES,<br><br>　　*Defendant*. | CIVIL ACTION NO. 1:13-cv-03553-MJG |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant, the Maryland Department of Human Resources ("DHR"), by undersigned counsel, hereby submits the following Memorandum in support of its motion to dismiss Plaintiff's Second Amended Complaint, ECF No. 21. The Second Amended Complaint should be dismissed because the Plaintiff has failed to sufficiently state a legally cognizable claim for a violation of the Americans with Disabilities Act ("ADA"), or for retaliation.

**I.      FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT**

Plaintiff began her employment with DHR in 1977. ECF No. 21 ¶ 3. Initially she was employed as an Administrative Assistant, but by 1995 Plaintiff had attained the position of Computer Network Specialist II ("CNS II") in DHR's Office of Technology for Human Services ("OTHS"). *Id*. ¶ 3. At the time of the events described in the Second Amended Complaint, the

head of OTHS was Isabel Fitzgerald ("Fitzgerald"), DHR's Chief Information Officer. *Id.* ¶ 5. However, the Second Amended Complaint provides no other information regarding OTHS, and Plaintiff does not explain what her job at OTHS entailed, or her role in that unit.

Plaintiff likewise provides very little detail about her diabetes, other than asserting that it is a disability within the meaning of the ADA. ECF No. 21 ¶ 9. She does not state, for example, whether it is Type I or Type II diabetes, or whether she is (or was) on any medication for her condition. Instead, Plaintiff alleges that she was assigned to "security (a sedentary position assigned as an accommodation for her disability since 2005)." ECF No. 21 ¶ 7. Plaintiff does not state why this accommodation was necessary, or what her job in "security" entailed, but, she alleges that in 2010 Fitzgerald "removed" her from the sedentary position "in security" and assigned her duties that required her to "move and travel constantly." ECF No. 21 ¶ 8. Plaintiff fails to explain why this was a problem for her. But it appears that it was Plaintiff's desire at that time to return to all her old CNS II duties. *Id.* ¶¶ 16, 18.

DHR told Plaintiff that she "would need medical documentation indicating that she could perform all the essential Computer Network Specialist II functions before it would consider continuing her in that job specialty." ECF No. 21 ¶ 16. DHR required her to obtain this medical clearance from "her 2005 doctor who originally diagnosed her disability." *Id.* ¶ 18. In response, Plaintiff provided a clearance from her doctor stating that Plaintiff "could do all the duties of a CNS II . . . without restriction." *Id.* ¶ 18, 19. However, Plaintiff herself told Fitzgerald that she would need an accommodation if she were to resume her old duties. *Id.* ¶ 19.

2

At the same time that Plaintiff was asking to resume her old duties, DHR was warning her about her "erratic, belligerent, and hostile behavior towards management." *Id.* ¶ 17. In February of 2010, Plaintiff took leave under the Family Medical Leave Act ("FMLA"). *Id.* ¶¶ 20, 25. Plaintiff does not offer any explanation for why she needed this leave, but her misconduct continued while she was on leave; in telephone conversations with her supervisor and other members of management at DHR, Plaintiff would hang up while they were speaking to her, or leave threatening voicemail messages for them. *Id.* ¶ 21.

Consequently, on March 9, 2010, DHR sent a notice of disciplinary action to Plaintiff, citing her "unprofessional conduct" and "failure to follow the chain of command." *Id.* ¶ 20. The notice referenced Plaintiff's prior discipline problems:

> [E]ach time management attempted to meet with [Plaintiff] to discuss her situation, she refused to attend. She left threatening voicemail messages for members of management. She became increasingly combative, raised her voice, and often hung up the phone on members of management.

ECF No. 21 ¶ 21. The notice warned Plaintiff that if she did not cease her threatening and hostile behavior towards management, she would be disciplined. *Id.* ¶ 24.

While Plaintiff was on medical leave, Fitzgerald scheduled her for a medical evaluation. *Id.* ¶ 26. After a follow-up evaluation, the State Medical Director came to a different conclusion from Plaintiff's doctor. The State Medical Director concluded that "[Plaintiff] is unable to

perform the full duties of a Computer Network Specialist II."[1] *Id*. ¶¶ 28, 34. Plaintiff alleges that Fitzgerald offered her a position which would have resulted in a demotion and that she rejected that offer. *Id*. ¶ 30. Thereafter, on December 6, 2010, Fitzgerald notified Plaintiff that she would be terminated, and gave Plaintiff the option to retire first. *Id*. ¶ 38. Plaintiff responded on December 27, 2010, by filing charges against DHR with the EEOC. *Id*. ¶¶ 30, 63; EEOC Charge, attached hereto as Exhibit A.[2] Thereafter, Plaintiff elected to resign, effective January 3, 2011. *Id*. ¶ 39, 52. This action followed.

## II. STANDARD OF REVIEW

Defendant DHR moves the Court to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief may be granted, under Fed. R. Civ. Proc. 12(b)(6). In considering a motion under Rule 12(b)(6), a court will test the sufficiency of the complaint, which must contain enough facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must establish "'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Wag More Dogs,*

---

[1] The Second Amended Complaint refers to Drs. Toney and Lyons interchangeably. For the purpose of this motion, Defendant submits that both are State Medical Directors and the distinction is immaterial.

[2] This court can consider documents that are integral to the complaint and authentic, such as Plaintiff's EEOC Charge, without converting the motion into a motion for summary judgment. *Columbia v. Haley*, 738 F.3d 107, 116 (2013).

*LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]"  *Iqbal*, 556 U.S. at 678–79.

## III.   ARGUMENT

### A. The Second Amended Complaint Must Be Dismissed Because It Fails To Allege That Plaintiff Was A Qualified Individual Entitled to Protection Under the ADA.

Although the Second Amended Complaint asserts that Plaintiff's suit arises under the ADA, ECF. 21, pp. 1, 7-9, it fails to allege that Plaintiff was a qualified individual entitled to protection under the ADA.  Consequently, Plaintiff's claims fail and her Second Amended Complaint must be dismissed.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a)(emphasis added).  The term "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. 12111(8).  To show that she was qualified, Plaintiff must define which functions of her position "bear more than a marginal relationship to the job at issue[,]" and then show that she "possess[ed] the skills necessary [and] was willing and able to demonstrate those skills."  *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F. 3d 209, 213 (4th Cir. 1994).

Plaintiff must provide allegations to this effect in her complaint. *Iqbal*, 556 U.S. at 663 (plaintiff must provide enough "factual content" so that a court is able to infer "that the defendant is liable for the misconduct alleged."). That is, plaintiff must allege "*facts* to establish what makes these functions 'essential' or to show that [she] possessed the skills, willingness, and ability to perform them properly." *Munoz v. Balt. County*, 2012 U.S. Dist. LEXIS 103597 at *19 (D. Md. 2012) (emphasis added). In *Munoz*, the district court reviewed a complaint for disability discrimination which simply stated, "[Plaintiff] can perform all of the essential functions of his position as an EMT Firefighter in the BCoFD without limitation and without any reasonable accommodation [and is a] qualified individual[.]" *Id*. at 20. The Court found this was insufficient, stating, "[Plaintiff] does not go further to allege any facts to establish what makes these functions 'essential' or to show that he possessed the skills, willingness, and ability to perform them properly." *Id*. Citing *Iqbal*, the Court described the allegations as "bare assertions" which did not suffice to state a claim that the plaintiff was qualified. *Id*. Therefore, the Court dismissed the claim of disability discrimination. *Id.* at 22.

The allegations in this case are just as skimpy. The Second Amended Complaint provides no information about the job of a CNS II, not even a general description of what a CNS II does, or how (for instance) it is different from the position of a CNS I. There is no allegation regarding the functions of a CNS II, or delineating which functions of a CNS II "bear more than a marginal relationship to the job at issue[.]" *Tyndall*, 31 F. 3d at 213. Nor does Plaintiff allege facts showing that she had the necessary skills, willingness, and ability to perform the essential

functions of the position. *Id*. The Second Amended Complaint says nothing about how Plaintiff's diabetes affects her ability to perform; why she needed an accommodation in 2005; why she needed an accommodation in 2010; whether her medical leave was related to her diabetes; whether she was under a medical restriction in 2005 or 2010; whether her diabetes is controlled; or whether she is being treated or receiving medication for her condition. Moreover, the Second Amended Complaint indicates that Plaintiff did not like the jobs to which she was assigned, and had serious disciplinary problems with her supervisors. Rather than setting forth essential facts supporting Plaintiff's claim, the Second Amended Complaint blithely asserts that, "[a]t all times, [Plaintiff] was ready and able to do her job as a CNS II operator." ECF No. 21 ¶ 22.

This conclusory allegation is insufficient. The applicable legal standard requires Plaintiff to provide enough "factual content" so that a court is able to infer "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. And the allegations should be "plausible." *Columbia*, 738 at 116. In this case, it is impossible to tell from the Second Amended Complaint in what respects Plaintiff was qualified for the position of a CNS II, and therefore impossible to show that it was unlawful for DHR to terminate her from that position.

Absent any description of her job function, Plaintiff's bare assertion that she was "ready and able" to perform her job function does not constitute "factual content" sufficient to present a plausible claim. "Ready and able" is a conclusory allegation that lacks any content. Nor does Plaintiff say anything about her skills, or how she is equipped to perform whatever it is that a

CNS II does. Because it lacks any factual content that could show how Plaintiff is a qualified individual within the meaning of the ADA, the Second Amended Complaint is legally insufficient.

Moreover, allegations of Plaintiff's misconduct and insubordination eviscerate Plaintiff's threadbare allegations. An employee who threatens others, including her own superior, is by definition not a qualified individual. *Jones v. American Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999); *Palmer v. Circuit Court of Cook County*, 117 F. 3d 351, 352 (7th Cir. 1997)(Posner, J.) ("The Act protects only 'qualified' employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one."). Plaintiff characterizes DHR's warnings as an "accusation," ECF No. 21 ¶ 18, but never denies that DHR did in fact view her as a hostile and difficult employee who "left threatening voicemail messages for members of management[,] . . . became increasingly combative, raised her voice, and often hung up the phone on members of management." *Id*. ¶ 21. Nor does Plaintiff deny that she did engage in the aforementioned conduct. To the contrary, the Second Amended Complaint shows that Plaintiff was *not* a qualified individual because she was a combative, hostile employee who threatened her supervisors. Therefore, all counts of the Second Amended Complaint must be dismissed.

### B. The Second Amended Complaint Fails to Allege Facts Supporting the Necessary Elements For a Wrongful Termination Claim.

Plaintiff's failure to allege that she was a qualified individual dooms her wrongful termination claim. Additionally, Plaintiff's inappropriate, insubordinate conduct towards her superiors means that Plaintiff cannot plausibly allege that she was fulfilling DHR's legitimate expectations. For these reasons, the claim for wrongful termination must fail.

To establish a prima facie case of wrongful termination under the ADA, a plaintiff must show that (1) she was a qualified individual with a disability, (2) she was discharged, (3) she was fulfilling her employer's legitimate expectations at the time of discharge, and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir. 2004) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

It is obvious that Plaintiff was not fulfilling the expectations of her supervisors and DHR management, up to and including senior DHR executive Isabel Fitzgerald. Plaintiff says that DHR accused her of "erratic, belligerent, and hostile behavior towards management[,]" ECF No. 21 ¶ 17, as well as "failure to follow the chain of command, and unprofessional conduct." *Id*. ¶ 20. According to DHR, Plaintiff refused to attend meetings, was combative with management, would often hang up the phone on her superiors, and leave them threatening voicemail messages. *Id*. ¶ 21.

These are not allegations that support a wrongful termination claim. Plaintiff needs to show she was satisfying her employer's expectations, not that DHR viewed her as "erratic, belligerent, and hostile." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (it is the decision maker's perspective which is dispositive on the issue of expectations). In *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55 (4th Cir. 1995), the Fourth Circuit provided some guidance on what sort of conduct will fail to satisfy an employer's expectations. In that case, the Court reversed the denial of an employer's motion for summary judgment when it was undisputed that the employee had a history of making flawed data entries, took too many personal calls and was so disruptive that her desk had to be relocated. *Id.* at 61.

This case is worse. This case alleges that DHR viewed Plaintiff as hostile and combative with her supervisors, and that DHR had to warn Plaintiff of discipline after she began hanging up the phone on her superiors and leaving threatening voicemail messages. ECF No. 21 ¶ 21. In light of these allegations, the solitary allegation that Plaintiff, on one occasion, received a good performance evaluation from one supervisor, *id.* ¶ 15, is irrelevant. Plaintiff does not allege that she was satisfying DHR's legitimate expectations, and what she does allege on this prong is not sufficient to state "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

Moreover, Plaintiff acknowledges that she "decided to retire." ECF No. 21 ¶ 40. Therefore, she fails to allege the second element of wrongful termination: discharge. Similarly, Plaintiff also fails to supply the fourth element, which calls for a plaintiff to allege

circumstances surrounding the discharge from which one could reasonably infer unlawful discrimination. Therefore, Count II of the Second Amended Complaint must be dismissed. *See Brandford v. Shannon-Baum Signs, Inc.*, 2012 U.S. Dist. LEXIS 115007 at *15 (D. Md. Aug. 15, 2012) (dismissing suit for failure to sufficiently allege circumstances which raise a reasonable inference of unlawful discrimination).

### C. Plaintiff's Claim Of Retaliation Must Fail Because DHR Gave Notice Of Plaintiff's Termination Before She Filed Her EEOC Charge.

The Second Amended Complaint fails to state a claim for retaliation because it fails to allege facts showing a causal relationship between Plaintiff's protected activities and any adverse employment action taken by DHR. Plaintiff alleges that she engaged in the protected activity of filing a charge with the EEOC on December 27, 2010, and that DHR terminated her in retaliation for filing the charge one month later. ECF No. 21 ¶¶ 67-68. However, she acknowledges that she was notified of her impending termination on December 6, 2010, three weeks before she filed the charge. *Id*. ¶¶ 39, 67. Assuming the truth of her allegations, Plaintiff would have been terminated even if she had filed no charges. Therefore, Plaintiff cannot establish the element of causation, and her claim for retaliation must fail.

Title VII forbids an employer from discriminating against an employee because that individual "opposed any practice" made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." 42 U.S.C. §2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, the Plaintiff must show (1) that she

engaged in protected activity; (2) a materially adverse employment action was taken against her; (3) the employer was aware of the protected activity; and (4) there was a causal connection between the protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), *Kralowec v. Prince George's Cnty.*, 503 F. Supp. 985, 1008 (1980). Filing an EEOC charge is a protected activity. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

According to Plaintiff's Second Amended Complaint, DHR notified Plaintiff that she would be terminated *before* she filed her EEOC charge. ECF No. 21 ¶¶ 39, 67. Therefore, her termination could not have been retaliation for filing the charge. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. DHR was not even aware of Plaintiff's protected activity at the time it gave her notice of termination because it gave notice on December 6, 2010, and Plaintiff did not file her charge until December 27, 2010. ECF No. 21 ¶¶ 39, 67.

Plaintiff has an obligation to sufficiently and plausibly allege that DHR was aware of her protected activity, and that there was a causal link between her protected activity and subsequent termination. *See Greene v. YRC, Inc.*, 2013 U.S. Dist. LEXIS 173934 at *2-3 (D. Md. 2013) (plaintiff must set forth a "well-pleaded" complaint to permit a court to infer more than the possibility of misconduct). In light of Plaintiff's failure to allege these essential elements, her claim for retaliation is destined to fail. Consequently, Count III of the Second Amended Complaint must be dismissed.

**IV.   CONCLUSION**

There is at least one fatal flaw in each of Plaintiff's counts. Plaintiff's claim for failure to accommodate cannot succeed because Plaintiff fails to allege that she was a qualified individual with a disability. As such, Plaintiff has not alleged a violation of the ADA. And Plaintiff's claim for wrongful termination cannot succeed, either, because Plaintiff failed to meet her employer's legitimate expectations at the time of discharge—to the contrary, as Plaintiff acknowledges, DHR viewed her as a hostile and insubordinate employee.

Finally, the claim for retaliation is destined to fail because Plaintiff filed her EEOC charge *after* she was told of her termination. There is no causal connection between the fact that Plaintiff was terminated and her protected activity, because the fact that DHR gave her notice first means that she would have been terminated even without the charge. Plaintiff thus fails to allege causation (or knowledge on the part of DHR), and her claim for retaliation must fail.

WHEREFORE, for the reasons set forth herein, Defendant requests that Plaintiff's Second Amended Complaint be dismissed with prejudice.

|  |  |
|---|---|
|  | DOUGLAS F. GANSLER<br>Attorney General of Maryland |
| May 12, 2014 | /s/———————————————<br>ANN M. SHERIDAN, No. 11137<br>JONATHAN POMERANCE, No. 28506<br>Assistant Attorneys General<br>311 West Saratoga Street, Suite 1015<br>Baltimore, Maryland 21201<br>(410) 767-2124 (Sheridan)<br>(410) 767-7449 (Pomerance) |

(410) 333-0026 (fax)
ann.sheridan@maryland.gov
jonathan.pomerance@maryland.gov