```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

| | | |
|---|---|---|
| JACQUELINE R. QUARLES | * | |
| Plaintiff | * | |
| vs. | * | CIVIL ACTION NO. MJG-13-3553 |
| MARYLAND DEPARTMENT OF HUMAN RESOURCES | * | |
| | * | |
| Defendant | * | |
| | * | |

* * * * * * * * *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendant Maryland Department of Human Resources' Motion to Dismiss Second Amended Complaint [Document 23] and the materials submitted relating thereto. The Court finds a hearing unnecessary.

I.  BACKGROUND[1]

   A.  Factual Allegations

Plaintiff Jacqueline R. Quarles ("Quarles") began working for Defendant Maryland Department of Human Resources ("MDHR") in 1977. Second Am. Compl. ("SAC") ¶ 3. In 1995, Quarles became a Computer Network Specialist in MDHR's Office of Technology for Human Resources. Id. At a time not specified in the Second Amended Complaint ("SAC"), Quarles "was employed as a Computer

---

[1] The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendant.

Network Specialist II [("CNS II")] under the supervision of Isabel Fitzgerald," ("Fitzgerald").[2]  Id. ¶ 5.

In or around 2005, Quarles was diagnosed with diabetes. Id. ¶¶ 9, 18.  Quarles's diabetes "limits her abilities to move freely, walk steps, or travel from building to building."  Id. ¶ 44.  In 2005, Quarles was assigned a "sedentary position [in security] as an accommodation for her disability."  Id. ¶ 7.

In May 2010, Fitzgerald removed Quarles from her sedentary assignment and "assigned her to a building with five (5) floors that required [Quarles] to go on all 5 floors in addition to duties in other parts of the state."[3]  Id. ¶¶ 7-8.

The SAC states that, at an unspecified time, "Ms. Quarles requested an accommodation from Ms. Fitzgerald but Ms. Fitzgerald denied the accommodation."  Id. ¶ 22.  However, the SAC also states that, at an unspecified time, Fitzgerald offered Quarles an "unacceptable" accommodation that "would [have] result[ed] in a demotion of eleven to twelve grades."  Id. ¶ 29.

As to the need for an accommodation, the SAC states that "[w]ith a minor accommodation, Ms. Quarles could perform all the essential functions of a Computer Network Specialist."  Id. ¶ 34.  However, the SAC seems to state that at some unspecified

---

[2]   The Second Amended Complaint ("SAC") is not clear as to when Quarles became a Computer Network Specialist II and whether she held that title during the relevant time period(s) at issue.
[3]   The SAC is not clear as to whether the May 2010 reassignment was a reassignment from CNS II to another position.

2

time, apparently in or about 2010, "Quarles sent management a medical note indicating that Ms. Quarles could work as a CNS II operative without restriction."[4]  Id. ¶¶ 18 -19.

The SAC states that MDHR "alleged that Ms. Quarles' actions were erratic, belligerent, and hostile behavior [sic] towards management."  Id. ¶ 17.  While Quarles was out on medical leave in March 2010, MDHR noted that when "management attempted to meet with Ms. Quarles . . . she refused to attend" and that Quarles "left threatening voicemail messages . . . became increasingly combative, raised her voice, and often hung up the phone on members of management."  Id. ¶ 20.

In a letter dated December 6, 2010, MDHR informed Quarles:

1. that she was being referred to the Maryland Division of Rehabilitation Services "'to pursue and follow alternative placement;'" and

2. that she "'ha[d] until January 3, 2011 to separate from your current position, [or MDHR would] take appropriate steps to vacate it.'"

Id. ¶ 38.

On December 27, 2010, Quarles filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Id. ¶¶ 6, 64.  Quarles retired

---

[4] The SAC states that Quarles had difficulty locating the doctor who diagnosed her diabetes in 2005 but that "she was able to get this physician to confirm [her] diabetes."  SAC ¶ 18.

3

from MDHR on January 3, 2011 because she "had no alternative." Id. ¶ 38.

### B.  Procedural Posture

Quarles filed the Complaint [Document 1], followed by the Amended Complaint [Document 5].  On January 31, 2014, MDHR filed a Motion to Dismiss [Document 12].  Quarles was then granted leave to file the Second Amended Complaint ("SAC")[Document 20].  On April 28, 2014, Quarles filed the SAC [Document 21], presenting claims in three Counts:

| | |
|---|---|
| Count One | Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. |
| Count Two | Wrongful Termination (under the Americans with Disabilities Act) |
| Count Three | Retaliation (under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.) |

By the instant Motion, MDHR seeks dismissal of all claims in the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule[5] of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

---

[5]  All "Rule" references herein are to the Federal Rules of Civil Procedure.

4

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. (alteration in original)).

III. DISCUSSION

    A.    Jurisdiction

The SAC does not, on its face, establish subject matter jurisdiction over the instant lawsuit due to the absence of an allegation that Quarles received, or was entitled to receive, a right-to-sue letter. See Davis v. N.C. Dep't of Correction, 48 F.3d 134, 140 (4th Cir. 1995) (noting, in a Title VII case, that "receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint.").[6]

However, MDHR has attached to the instant Motion, a copy of the Charge of Discrimination filed with the EEOC, along with a Notice of Right to Sue issued to Quarles, upon her request, on September 13, 2013. See [Document 23-2].

The Court will, therefore, consider the record to reflect that it has subject matter jurisdiction.

    B.    Americans with Disabilities Act Claims – Counts I & II

Counts I and II must be dismissed due to the failure of the SAC to allege:

- A plausible claim that Quarles is entitled to protection under the Americans with Disabilities Act

---

[6] The Americans with Disabilities Act incorporates the procedural requirements of Title VII. See, e.g., 42 U.S.C. § 12117(a); Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999).

6

>   because she had a physical impairment that substantially limited a major life activity; or
>
> - A plausible claim that Quarles is entitled to protection under the Americans with Disabilities Act because she was regarded as being disabled.

The Americans with Disabilities Act ("ADA") prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to[, inter alia,] the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A plaintiff who brings claims under the ADA for failure to accommodate and wrongful termination must establish that she is a "qualified individual with a disability."[7]

---

[7]  To establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show:

>   "(1) that he was an individual who had a disability within the meaning of the statute;
>
>   (2) that the [employer] had notice of his disability;
>
>   (3) that with reasonable accommodation he could perform the essential functions of the position ...; and
>
>   (4) that the [employer] refused to make such accommodations."

Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999) (alterations in original)).
  To establish a prima facie case of wrongful termination under the ADA, a plaintiff must show that:

1.  <u>Individual with a Disability</u>

An individual has an ADA-qualifying disability if she:

   (A) [has] a physical or mental impairment that substantially limits one or more major life activities of such individual;

   (B) [has] a record of such an impairment; or

   (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(1).

   a.  <u>Impairment</u>

"An impairment is a disability [under the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "'[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

---

   (1) she was a "qualified individual with a disability";

   (2) she was discharged;

   (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and

   (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination.

<u>Rohan v. Networks Presentations LLC</u>, 375 F.3d 266, 272 n.9 (4th Cir. 2004).

walking, standing, lifting, [and] bending . . . ." 42 U.S.C. § 12102(2)(A). "[T]he operation of a major bodily function, [such as] respiratory, circulatory, [and] endocrine" functions, also qualifies as a major life activity. Id. § 12102(2)(B).

An individual who is a diagnosed diabetic is not per se disabled under the ADA. See Schneider v. Giant of Maryland, LLC, 389 F. App'x 263, 268 (4th Cir. 2010) (per curiam); Scheerer v. Potter, 443 F.3d 916, 919 (7th Cir. 2006); Miller v. Verizon Commc'ns, Inc., 474 F. Supp. 2d 187, 197 (D. Mass. 2007). Rather, "the analysis of whether diabetes is a qualified disability under the ADA is fact-specific." Schneider, 389 F. App'x at 268; see also Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 34 (1st Cir. 2010); Fraser v. Goodale, 342 F.3d 1032, 1041-42 (9th Cir. 2003); Gonzalez v. Sears Holding Co., 980 F. Supp. 2d 170, 184-85 (D.P.R. 2013).[8]

---

[8]   The ADA Amendments Act of 2008 ("ADAAA") took effect on January 1, 2009. See Pub.L. No. 110-325, § 8; 122 Stat. 3553, 3553 (Sept. 25, 2008). The ADAAA expresses congressional concern that case law from the U.S. Supreme Court had "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect." Id. The ADAAA "reject[ed] the standards enunciated" in previous Supreme Court cases and stated that "[t]he definition of disability [under the ADA] shall be construed in favor of broad coverage of individuals." 122 Stat. 3553; see Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014).
  The Court was unable to locate a federal trial or appellate court decision applying the post-ADAAA version of the ADA to a disability discrimination claim with diabetes as the qualifying disability. However, even after enactment of the ADAAA, an individual is not disabled under the ADA unless the individual

9

The SAC states only that:

- Quarles was diagnosed with diabetes in 2005; and

- The diabetes "limits her abilities to move freely, walk steps, or travel from building to building."

SAC ¶¶ 9, 18, 44.

The SAC lacks specific factual allegations regarding the type of diabetes from which Quarles suffers, the degree to which the diabetes limits her movement, or how her diabetes otherwise affects her life.[9]  The SAC does not state that Quarles's diabetes "<u>substantially</u> limits" her ability to walk, rather than merely "limit[ing]" that ability.  Cf. Schneider, 389 F. App'x at 269 (affirming summary judgment for the defendant employer because "Schneider claimed that [his Type 1] diabetes affected his walking, standing, and digestion, but presented no evidence that those activities were substantially limited in August 2005 such that his condition became disabling within the ADA").

---

can show that she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12101(1)(A).

[9]   Nor, does Quarles refer to being substantially limited in eating or in the function of her endocrine system, two major life activities often cited by individuals with diabetes who bring ADA claims.  See, e.g., Rohr v. Salt River Project Agric. Imp. & Power Dist., 555 F.3d 850, 858 (9th Cir. 2009) ("Diabetes is a 'physical impairment' because it affects the digestive, hemic and endocrine systems, and eating is a 'major life activity.'  Whether Rohr's [Type 2] diabetes substantially limits his eating is an 'individualized inquiry.'  Once an impairment is found, the issue is whether Rohr's diabetes substantially limits his activity of eating.").

Walking is a major life activity. However, an allegation of some walking limitation is not an allegation of specific facts that create a plausible claim of a substantial walking limitation. Cf. Fraser, 342 F.3d at 1040 ("[E]ating is a major life activity. However, eating specific types of foods, or eating specific amounts of food, might or might not be a major life activity. If a person is impaired only from eating chocolate cake, he is not limited in a major life activity because eating chocolate cake is not a major life activity."); Miller, 474 F. Supp. 2d at 196 (concluding, on summary judgment, that "Plaintiff's diabetes places no more than negligible limitations on her day to day activities," in part because "Plaintiff offers no documentation, medical or otherwise, in support of [her] assertions" that her diabetes limited her "basic mobility").

The SAC does not contain adequate factual allegations to present a plausible claim that Quarles is disabled under the ADA because her diabetes substantially limited her in a major life activity.

b.   "Regarded as" being disabled

Quarles contends that, even if she did not have a physical impairment that substantially limited a major life activity, MDHR "regarded" her as being disabled under 42 U.S.C. §

12102(1)(C).  Quarles states that MDHR previously gave her an accommodation and "said to the EEOC that [she] had a qualified disability."  [Document 25] at 10; see also SAC ¶¶ 7, 9.  However, Quarles misconstrues "being regarded as having" as that phrase is used to define a disabled individual under the ADA.

To present a plausible claim that MDHR regarded her as being disabled, Quarles must allege specific facts indicating that MDHR:

> (1) "mistakenly believe[d] that [she] has a physical impairment that substantially limits one or more major life activities," or
>
> (2) "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities."

Rhoads v. F.D.I.C., 257 F.3d 373, 390-91 (4th Cir. 2001) (citation omitted) (alteration in original); see also 42 U.S.C. § 12102(3)(A).  Thus, "when an employee [contends] that he was regarded as disabled, the analysis 'focuses on the reactions and perceptions of the . . . decisionmakers' who worked with the employee."  Wilson v. Phoenix Specialty Mfg. Co., 513 F.3d 378, 384-85 (4th Cir. 2008) (citation omitted).

Quarles has not alleged specific facts presenting a plausible claim (1) that MDHR mistakenly believed she had diabetes or (2) that her diabetes was not a limiting impairment, yet MDHR mistakenly believed that it was.  Cochran v. Holder, 436 F. App'x 227, 233 (4th Cir. 2011) ("Cochran must show that

the USMS 'entertain[ed] misperceptions about [him]' by believing he had a 'substantially limiting impairment' that he did not in fact have or that was not 'so limiting.'" (citation omitted) (alteration in original)).

Quarles offers no legal authority supporting her argument that "regarded as" being disabled means she is disabled under the ADA because at some point, MDHR allegedly "acknowledge[d to the EEOC] that Ms. Quarles has an ADA disability." SAC ¶ 9.

Moreover, the SAC presents no specific factual allegations supporting the conclusory assertion that MDHR regarded Quarles as being disabled because it assigned her to a sedentary position in 2005 as an accommodation for her diabetes. The SAC does not present specific factual allegations regarding whether MDHR mistakenly believed that Quarles had a substantially limiting impairment or merely complied with Quarles's request for a sedentary positon without such a belief. Cf. Cochran, 436 F. App'x at 233 ("Simply believing Cochran had an impairment is not enough under this inquiry. Rather, Cochran must prove that the USMS believed his hearing condition 'substantially limit[ed] a major life activity.'" (alteration in original)).

Finally, the allegations in the SAC regarding the "reactions and perceptions" of MDHR employees in the spring of 2010 indicate that Quarles was not regarded by MDHR as having a disability. In fact, the SAC states that Fitzgerald referred

13

Quarles "to the State's physician to confirm Ms. Quarles' diagnosis of diabetes" and "to a neurologist and a behavior specialist for a mental examination."  SAC ¶¶ 9-10.  The SAC does not present factual allegations that would support a plausible claim that, despite not being advised that Quarles was disabled, MDHR nevertheless believed that she was disabled.

In sum, the SAC does not contain adequate factual allegations to support a plausible claim that Quarles is disabled under the ADA because MDHR regarded her as being disabled.

Accordingly, the Court finds that Quarles has not presented a plausible claim that she is disabled under the ADA.[10]

### 2.    Qualified Individual

The ADA prohibits discrimination against a "qualified" individual with a disability.  42 U.S.C. § 12112(a).  A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

---

[10] The Court need not address whether Quarles is "disabled" under the third definition of disability – having "a record of [a disability]" 42 U.S.C. § 12102(1)(B) – because the SAC does not present this as a basis for establishing that Quarles is disabled.

14

Quarles contends that she "could work as a CNSII operator" and "could do all the duties of a CNS II."  SAC ¶¶ 18, 19.

To establish that she was qualified for the CNS II position, Quarles must show that:

> (1) "she could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue," or
>
> (2) some "reasonable accommodation by the employer would enable [her] to perform those functions."

Bell v. Shinseki, No. 13-1890, 2014 WL 4555250, at *1 (4th Cir. Sept. 16, 2014) (quoting Tyndall v. Nat'l Educ. Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir. 1994) (alteration in original)).

Quarles does not describe the essential functions of a CNS II, the sedentary position she held from 2005 through May 2010, or the position to which she was assigned in May 2010 that required "mov[ing] and travel[ing] constantly."  SAC ¶ 8.  Nor does she identify whether she retained the same job classification as a CNS II after the May 2010 reassignment. Although Quarles contends that she requested an accommodation from MDHR, the SAC does not state when Quarles made the request, what the request entailed, or what MDHR offered in response.[11] Moreover, the SAC presents inconsistent allegations as to

---

[11]  Other than to note that MDHR's offer was "unreasonable." SAC ¶ 29.

whether Quarles required an accommodation.  In one place, the SAC states that "[w]ith a minor accommodation, Ms. Quarles could perform all the essential functions of a Computer Network Specialist."  Id. ¶ 34.  In another, however, the SAC seems to state that at some unspecified time "Quarles sent management a medical note indicating that Ms. Quarles could work as a CNS II operative without restriction."  Id. ¶ 19.

The Court finds it highly doubtful that the SAC presents adequate factual allegations to present a plausible claim that Quarles was a "qualified individual with a disability."  However, by virtue of the failure of the SAC to present a plausible claim that Quarles was disabled - as defined in the ADA - the qualified individual issue is moot.

### C. Title VII Retaliation Claim – Count III

In Count III of the SAC, Quarles presents a claim of "retaliation for filing an EEOC charge under Title VII of the 1964 Civil Rights Act."  SAC at 1.

Title VII prohibits an employer from discriminating against an employee because the employee filed a charge of discrimination based upon an unlawful employment practice.[12]  42 U.S.C. § 2000e-3(a).

---

[12]   The ADA contains a similar prohibition.  See 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made

16

To establish a prima facie case that MDHR retaliated against her in violation of Title VII, Quarles must show that:

    (1)   she engaged in protected activity,

    (2)   an adverse employment action was taken against her, and

    (3)   there was a causal link between the protected activity and the adverse employment action.

Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).[13]

The retaliation claim in the SAC is fatally flawed because the adverse employment action upon which the claim is based occurred before, not after, the alleged protected activity that was the subject of retaliation. There cannot be retroactive causation. Hence, the retaliation claim lacks a causal link.

In the SAC, Quarles alleges that she "engaged in a protected activity in that she filed an EEOC charge [on December 27, 2010] and the state took direct retaliatory action." SAC ¶¶ 57, 64. Filing a Charge of Discrimination with the EEOC is a protected activity. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998).

---

unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").
[13] See Rhoads v. F.D.I.C., 257 F.3d 373, 391-92 (4th Cir. 2001) (applying the same legal standard to retaliation claims brought under the ADA).

The SAC states that "[t]he adverse action or termination came quickly <u>after Ms. Quarles made her EEOC charge</u>." SAC ¶ 63 (emphasis added). The SAC refers to Quarles's "termination" as the "adverse employment action." However, the relevant date upon which the Title VII retaliation claim must focus is December 6, 2010. On this date, Fitzgerald informed Quarles in a letter that Quarles had until January 3, 2011 to resign or her position would be vacated. <u>Id</u>. ¶ 38. January 3, 2011 – the date when Quarles resigned pursuant to the December 6, 2010 letter - is not the pertinent date of the adverse employment action. <u>Cf</u>. <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981) ("[T]he operative decision was made-and notice given-in advance of a designated date on which employment terminated. . . . [T]he proper focus is on the time of the <u>discriminatory</u> <u>act</u>, not the point at which the <u>consequences</u> of the act become painful."); <u>Hospodor v. Burlington Indus., Inc.</u>, 205 F.3d 1333 (4th Cir. 2000) ("In a case involving alleged unlawful termination, the time for filing EEOC charges accrues when the employee receives notice of his termination, not when the termination occurs.").

Based upon the facts alleged in the SAC, Quarles cannot establish a causal link between the filing of the Charge of Discrimination on December 27, 2010 and receiving the notice of intended termination from Fitzgerald on December 6, 2010 because the protected activity occurred 21 days <u>after</u> the allegedly

18

adverse employment action.  Thus, MDHR is entitled to dismissal of Quarles's retaliation claim.

In her Response to the instant Motion, Quarles seeks to present a claim based upon retaliation on the grounds that the protected activity "was asking for a legitimate accommodation for her disabling condition." [Document 25] at 13.  This claim will not be considered because it is not presented in the SAC.

Quarles cannot, in her Response to the instant Motion, file a Third Amended Complaint to add new claims.  See Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ("Zachair is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."); see also Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[T]he sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a 12(b)(6) motion . . . and most certainly may not be considered when the facts they contain contradict those alleged in the complaint." (citations omitted)); Great N. Ins. Co. v. Recall Total Info. Mgmt., Inc., No. 8:13-CV-01829-AW, 2013 WL 6804745, at *3 (D. Md. Dec. 19, 2013) ("Although Plaintiff argues that the 'allegations' gleaned from the news reports mentioned above create a plausible inference of gross negligence, the Court

19

declines to consider these averments as Plaintiff made them in a legal memorandum, not the Complaint.").

Accordingly, all claims in Count III are DISMISSED.

IV. CONCLUSION

For the foregoing reasons:

1. Defendant Maryland Department of Human Resources' Motion to Dismiss Second Amended Complaint [Document 23] is GRANTED.

2. Judgment shall be issued by separate Order

SO ORDERED, on Thursday, December 4, 2014.

```
              /s/
      Marvin J. Garbis
  United States District Judge
```